SIDDHARTH BREJA
33 Seneca Ave, Apt 308
San Francisco, CA 94112
Phone: 206-948-2400
Email: sidbreja@gmail.com

**Defendant Pro Se**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW G. WATTERS,<br><br>                    Plaintiff,<br>vs.<br>SIDDHARTH BREJA, an individual; and<br><br>Defendants.<br>AMERICAN EXPRESS COMPANY, a New York corporation;   JPMORGAN   CHASE   BANK NATIONAL ASSOCIATION, an Ohio corporation | Case No.: 4:23-cv-03183-HSG<br><br>**DEFENDANT SIDDHARTH BREJA'S NOTICE OF MOTIONS AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR COMPEL ARBITRATION (USING A FEE ARBITRATION PROGRAM APPROVED BY THE STATE BAR OF CALIFORNIA)**<br><br>Date: October 26, 2023<br>Time: 2:00 PM<br>Court Room: 2<br><br>Action Filed: 06/27/2023<br>Assigned to the Honorable Haywood S. Gilliam, Jr. |

## I. NOTICE OF MOTION

PLEASE TAKE NOTICE that on **October 26, 2023**, at **2 PM**, at **Oakland Courthouse, Courtroom 2 – 4th Floor 1301 Clay Street, Oakland, CA 94612,** before the **Honorable Haywood S. Gilliam, Jr.,** I will, and hereby do, move for an order granting this Motion to **DISMISS PLAINTIFF's COMPLAINT OR COMPEL ARBITRATION (using a Fee Arbitration Program Approved by The State Bar of California).**

The motion will be based on this Notice and Motion, the Memorandum of Points and Authorities below, and the [Proposed] Order.

## II. ISSUES TO BE DECIDED

Whether the complaint should be dismissed pursuant to Rule 12(b) for:

☐ lack of personal jurisdiction as the arbitration clause is enforceable

☐ lack of subject-matter jurisdiction

☐ failure to state a claim upon which relief can be granted

## III. MEMORANDUM OF POINTS AND AUTHORITIES

Included in the following pages.

Dated: Aug 28, 2023                              By: /s/ Siddharth Breja
                                                 SIDDHARTH BREJA
                                                 Respondent, Pro Se

**TABLE OF CONTENTS**

**(<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>)**

<u>Page No.</u>

I.     INTRODUCTION……………………………………………………… 1

II.    STATEMENT OF RELEVANT FACTS……………………………... 1-3

III.   ARGUMENT……………………………………………………… 3-7

    A. The Arbitration Provision Is Governed By The Federal Arbitration Act… 3-4

    B. The Arbitration Provision Is Valid And Must Be Enforced ……………… 4-5

    C. There Is No Basis To Revoke The Agreement ……………………… 5-7

    D. Plaintiff's First Cause of Action (Computer Fraud) is frivolous………….. 7

IV.   CONCLUSION……………………………………………………..… 7

i

**DEFENDANT, SIDDHARTH BREJA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR COMPEL ARBITRATION**
**Case No. 4:23-cv-03183-HSG**

# TABLE OF AUTHORITIES

**Page No(s).**

## Cases

*Armendariz v. Foundation Health Psychcare Servs., Inc.*
    24 Cal. 4th 83 (2000)……………………………………………………… 6

*AT&T Mobility LLC v. Concepcion*
    563 U.S. 333 (2011) ……………………………………………………… 3,5

*Baltazar v. Forever 21*
    62 Cal. 4th 1237 (2016) ………………………………………………… 5,6

*Circuit City Stores v. Adams*
    279 F.3d 889 (2002) ……………………………………………………… 5

*Circuit City Stores v. Adams*
    532 U.S. 105 (2001) ……………………………………………………… 3

*Citizens Bank v. Alafabco, Inc.*
    539 U.S. 52 (2003) ……………………………………………………… 4

*Dotson v. Amgen, Inc.*
    181 Cal. App. 4th 975 (2010) …………………………………………… 5-6

*First Options of Chicago, Inc. v. Kaplan*
    514 U.S. 938 (1995) ……………………………………………………… 4-5

*Green Tree Fin. Corp. v. Randolph*
    531 U.S. 79 (2000) ……………………………………………………… 5

*Howsam v. Dean Witter Reynolds, Inc.*
    537 U.S. 79 (2002) ……………………………………………………… 4

*McKnight v. State Bar*
    (1991) 53 Cal.3d 1025, 1037 …………………………………………… 3

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
    460 U.S. 1 (1983) ……………………………………………………… 4

*Pearson Dental v. Super. Ct.*
    48 Cal. 4th 665 (2010) ………………………………………………… 6

# TABLE OF AUTHORITIES

## (cont'd)

*Page No(s).*

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. LLC*
    55 Cal. 4th 223 (2012) …………………………………………… 5-6

*Roman v. Super. Ct.*
    172 Cal. App. 4th 1462 (2009) …………………………………… 6

*Stewart v. Preston Pipeline Inc.*
    134 Cal. App. 4th 1565 (2005) …………………………………… 4

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*
    363 U.S. 574 (1960) ……………………………………………… 4-5

*Wagner v. Stratton Oakmont, Inc.*
    83 F.3d 1046 (9th Cir. 1996) …………………………………… 5

## Statutes

9 U.S.C. § 2 ……………………………………………………. 1-3

9 U.S.C. § 4 ……………………………………………………. 4

Cal. Bus. & Prof. Code § 6200 …………………………………… 1

California Rules of Professional Conduct Rule 1.15 ………………………… 2

Cal. Civ. Code § 1550 ……………………………………………... 4

Cal. Civ. Code § 1643 ……………………………………………... 6

Cal. Civ. Code § 3541 ……………………………………………... 6

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ……………………… 1,7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

1.     Plaintiff Andrew G. Watters ("Plaintiff"), an attorney, was retained by Siddharth Breja ("Defendant") on May 1, 2023 to represent Defendant in in his Divorce trial in San Francisco set for Jun 6-8, 2023.

2.     Plaintiff's claims in the matter should be dismissed and compelled to Arbitration (using a fee arbitration program approved by the State Bar of California) because a binding arbitration agreement covers this fee dispute.  When Plaintiff was retained by Defendant, the agreement had the following arbitration clause (see **Defendant's Exhibit 1** for the full agreement). The parties' agreement to arbitrate is therefore valid and enforceable under California law and the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2.

```
                    XII.
         ARBITRATION OF FEE DISPUTE

     Before resorting to litigation, Attorney and Client shall
first attempt to arbitrate any disputes over attorney fees
using a fee arbitration program approved by the State Bar of
California.  Client is advised that fee arbitration is optional
for Client but mandatory for Attorney (though the award shall be
nonbinding).
```

3.     In California, before an attorney can sue his or her client over fees, the attorney must go through Mandatory Fee Arbitration based on the Mandatory Fee Arbitration Act. ("MFAA") See Calif. Bus. & Prof. § 6200 and following.

4.     Plaintiff's Case should also be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Plaintiff's First Cause of Action (Computer Fraud) is frivolous and appears to be included only for the purpose of permitting the federal court's jurisdiction in this case.

## II. STATEMENT OF RELEVANT FACTS

5.     Defendant paid Plaintiff $20,000 on May 01, 2023, which comprised two payments of $10,000 each ($10,000 via wire deposit and $10,000 via American Express credit card), where $10,000 was a retainer and $10,000 was a "*trial deposit*" which was refundable if the case settles at least 10 days before trial (see Item VI. of the agreement pasted below, *highlight added*).

VI.
ADVANCE DEPOSITS

Client must pay ten thousand dollars ($10,000) up front as a retainer, which will be held in Attorney's trust account as security and applied to Attorney's bills to Client, or in the alternative held in Attorney's operating account and treated as a pre-payment or true retainer, at Attorney's sole discretion (Attorney's policy is as stated in his written policy policy, which is available on request: payments under $5,000 are held in the operating account, while payments over $5,000 (or to the extent greater than $5,000) are held in the trust account, unless expected to be earned within 30 days). This payment is due before any work commences. **It is expressly understood that in the event Client hires, then discharges, Attorney within any period of time due to a change in Client's decision, or otherwise, the retainer is non-refundable. Client must also pay $10,000.00 up front as a trial deposit. Trial deposit is refundable if the case settles at least 10 days before trial (which is June 6-8, 2023).** Attorney agrees to cap fees at $20,000.000 through end of this trial.

6. Immediately, after getting the payment, Plaintiff didn't provide the service that he was supposed to (missing deadlines, being unresponsive and professionally negligent, failing to deliver as committed, etc.) and constantly asked the Defendant to withdraw the representation. As a result, as the Plaintiff himself admits in Para 14 of his complaint, the Defendant was "*drafting his own legal briefs, specifying the issues and order of arguments in legal briefs*", and which also resulted in the Defendant following up repeatedly on tasks that Plaintiff was not delivering on, resulting in communication burden for the Defendant.

7. On May 26, 2023, in the continuance hearing, Judge continued the trial to Jul 17-19, 2023 and Defendant informed the Plaintiff to terminate the agreement and refund him the $10,000 held in the trust account as he had met the condition for the refund in the agreement but the Plaintiff denied the request. Arguably for the Defendant, it was a result worse than a settlement, and Plaintiff had delivered almost nothing during the course of his representation. In response to Defendant's request for the refund of the trial deposit and the retainer, Plaintiff, responded "*I'll be happy to address these issues in depth in a fee arbitration so you can have clarity and hear it from someone else.*" (see **Defendant's Exhibit 2** for the email)

8. California attorneys, by law, are required to maintain "attorney trust accounts." California Rules of Professional Conduct Rule 1.15. These trust accounts are used to hold advance deposits (non-

true retainers) from clients until the fees are earned, to hold settlement proceeds, to hold client funds until there is an agreement between the parties or a court order, etc. If the attorney and the client get into a fee dispute, the attorney is not allowed simply to take what the attorney claims is his share of the recovery from the attorney's trust account. *McKnight v. State Bar* (1991) 53 Cal.3d 1025, 1037

9. Furthermore, after denying the refund request, when Defendant brought up Plaintiff's fraudulent conduct, Plaintiff blocked Defendant over email preventing any further communication or settlement attempts (see **Defendant's Exhibit 3**)

10. Defendant, as a recourse to get his refund, disputed the payment of $10,000 paid to the Plaintiff with his American Express credit card, and provided American Express with the facts outlined above. American Express, based on its internal investigation, ruled in Defendant's favor and refunded the Defendant $10,000. It was well within Defendant's rights to dispute the payment, and he did so truthfully and there was no fraud, as falsely alleged (without any substantiating evidence) by the Plaintiff.

11. In the end, Plaintiff still received a payment of $10,000 and Defendant had to hire another attorney and had to pay for her $20,000 fee for the trial, while suffering irreparable harm as a result of Plaintiff's unethical, negligent and fraudulent conduct.

12. Contrary to Plaintiff's false accusation, Defendant *never* contacted Plaintiff's bank, JPMORGAN Chase Bank, let alone submit any documentation and/or information to Chase.

### III. ARGUMENT

**A. The Arbitration Provision Is Governed By The Federal Arbitration Act**

13. The Federal Arbitration Act declares a "liberal federal policy" favoring the enforcement of arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011). It provides that a "written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

14. In *Circuit City Stores v. Adams*, 532 U.S. 105 (2001), the Supreme Court explained that "what Congress intended when it legislated to cover contracts 'involving commerce,' . . . [was to] provid[e] that coverage would extend to the outer constitutional limits under the Commerce Clause." *Adams*, 532 U.S. at 134.

15.     For the FAA to apply, only a "general practice need bear on interstate commerce in a substantial way." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 27 (2003). Given the Supreme Court's broad interpretation of "a transaction involving commerce," the Arbitration Provision here is plainly subject to the FAA.

16.     The FAA therefore applies to the Arbitration Provision.

**B. The Arbitration Provision Is Valid And Must Be Enforced.**

17.     Consistent with the principle that arbitration is a matter of contract, the FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of a party to the agreement. 9 U.S.C. § 4. In determining whether to compel arbitration under the FAA, courts generally look at two "gateway" issues:

(i) whether there is a valid agreement to arbitrate between the parties; and

(ii) whether the agreement covers the dispute.

*See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). If there is any doubt as to the proper interpretation of the agreement on any issue related to arbitrability, the FAA "establishes that . . . [it] should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Both of the "gateway" issues under the FAA have been met here.

18.     **The Arbitration Provision is Valid.** "[A]rbitration is a matter of contract." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Ordinary state law principles governing the formation of contracts are therefore used to determine whether the parties agreed to arbitrate. See *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under California law, a valid contract exists when (1) the parties are capable of contracting, and there is (2) a lawful object, (3) mutual consent, and (4) sufficient cause or consideration. Cal. Civ. Code § 1550; see also *Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1585-86 (2005). The Arbitration Provision here meets all of these requirements.

19.     **The Arbitration Provision Covers All of Plaintiff's Claims.** Courts must "interpret the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor

- 4 -

of arbitration." *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996); see also *United Steelworkers*, 363 U.S. at 582-83 (courts must conclude disputes are covered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts shall be resolved in favor of coverage."). Here, the Arbitration Provision covers all claims arising out of Plaintiff's "Legal Representation Agreement" as an attorney to represent the Defendant in his divorce trial. All of Plaintiff's claims fall within the scope of the Arbitration Provision because they each arise from his "Legal Representation Agreement".

**C. There Is No Basis To Revoke The Agreement.**

20.     An agreement to arbitrate may be "invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011). Whether grounds for revocation exist is a question of state law. *First Options*, 514 U.S. at 944; *Circuit City Stores v. Adams*, 279 F.3d 889, 892 (2002). Plaintiff bears the burden of showing that the Arbitration Provision is unenforceable, a burden he cannot meet. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000); *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. LLC*, 55 Cal. 4th 223, 247 (2012).

21.     First, there is no genuine argument that the Arbitration Provision is unconscionable. The "doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Baltazar v. Forever 21*, 62 Cal. 4th 1237, 1243 (2016). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id. at 1244. No matter how heavy one side of the scale is, however, both procedural and substantive unconscionability are required for a court to hold an arbitration provision unenforceable. *Pinnacle*, 55 Cal. 4th at 247; *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 99 (2000). Neither provides any basis to set aside Plaintiff's agreement to arbitrate.

22.     **Plaintiff Cannot Establish Procedural Unconscionability.** Procedural unconscionability focuses on unfair surprise or oppression. *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 980 (2010). Here, there is neither as the agreement was drafted by the Plaintiff, who is himself an

attorney. Oppression arises in situations where there is unequal bargaining power and little meaningful choice. Id. at 980-81. Surprise involves scenarios where the terms of the bargain are hidden in a long document by a party in a superior bargaining position. *Roman v. Super. Ct.*, 172 Cal. App. 4th 1462, 1469 (2009) ("The arbitration provision was not buried in a lengthy employment agreement. Rather it was contained on the last page of a seven-page employment application."). Here, the Arbitration Provision is not buried or hidden; it is part of a five-page document, which is shorter than the agreements that courts enforced in the *Dotson and Roman* decisions. The Arbitration Provision specifically calls out "*Attorney and Client shall first attempt to arbitrate any disputes over attorney fees using a fee arbitration program approved by the State Bar of California.*". Plaintiff "was not lied to, placed under duress, or otherwise manipulated into signing the arbitration agreement." *Baltazar*, 62 Cal. 4th at 1245. Nor is there any evidence that Plaintiff tried to negotiate the arbitration provision, was told that he could not, or had no alternatives to accepting the Defendant as a client. In short, the Arbitration Provision is not procedurally unconscionable.

23. **Plaintiff Cannot Establish Substantive Unconscionability**. The bar to establish substantive unconscionability here is high, and the facts do not support such a finding. The California Supreme Court has explained: "Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term **must be so one-sided as to shock the conscience**." *Pinnacle*, 55 Cal. 4th at 246 (emphasis added). In analyzing an arbitration provision, three rules of interpretation control:

1. "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." Cal. Civ. Code § 1643.

2. "An interpretation which gives effect is preferred to one which makes void." Cal. Civ. Code § 3541.

3. The "public policy in favor of arbitration as speedy and relatively inexpensive means of dispute resolution" means that an arbitration provision must be interpreted "in a manner that renders it enforceable rather than void." *Pearson Dental v. Super. Ct.*, 48 Cal. 4th 665, 682 (2010)..

Here, Plaintiff cannot identify any provision that is overly harsh or one-sided, or any provision that otherwise shocks the conscience as the agreement was drafted by him. Furthermore, and to the contrary, the arbitration is to be conducted under the rules set forth in the State Bar of California.

**D. Plaintiff's First Cause of Action (Computer Fraud) is frivolous.**

24.     Plaintiff's Case should also be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff's First Cause of Action (Computer Fraud) is frivolous and appears to be included only for the purpose of permitting the federal court's jurisdiction in this case. Defendant, as a recourse to get his refund, disputed the payment of $10,000 paid to the Plaintiff with his American Express credit card, and provided American Express with the facts, including the Legal Services Agreement between the Plaintiff and Respondent. American Express, based on its internal investigation, ruled in Defendant's favor and refunded the Defendant $10,000. It was well within Defendant's rights to dispute the payment, and he did so truthfully and there was no computer fraud, as falsely alleged (without any substantiating evidence) by the Plaintiff.

## IV. <u>CONCLUSION</u>

25.     For the reasons set forth above, Defendant respectfully requests that this Court to dismiss the case or compel Plaintiff to arbitrate the claims (using a fee arbitration program approved by the State Bar of California) alleged in his Complaint.


Respectfully submitted,


Dated: <u>Aug 28, 2023</u>                                          By: <u>/s/ Siddharth Breja</u>
                                                                    SIDDHARTH BREJA
                                                                    Respondent, Pro Se

# Defendant Breja's Exhibit 1

Case#: 4:23-cv-03183-HSG

Andrew G. Watters (Plaintiff) vs. Siddharth Breja (Defendant) et al

Andrew G. Watters, Esq.
555 Twin Dolphin Dr., Ste. 135
Redwood City, CA 94065
andrew@andrewwatters.com
+1 (415) 261-8527

LEGAL REPRESENTATION AGREEMENT

This Legal Representation Agreement ("Agreement") is made effective this 1st day of May, 2023, in Redwood City, California between Andrew G. Watters, Esq. ("Attorney") on the one hand, and Sid Breja ("Client"), on the other hand.

I.

AUTHORIZED MEANS OF COMMUNICATION WITH CLIENT

Until further written notice, Client hereby authorizes Attorney to communicate with Client by the following means (place an "X" in each blank that applies):

A.     At Client's primary address, which is:

33 Seneca Ave, Apt 308, San Francisco CA 94112

____   by U.S./International Mail
____   by DHL, FedEx, or equivalent overnight delivery service
____   by telephone number: _____
  X    by cell phone at: 206-948-2400
____   by home facsimile at: _____
  X    by home e-mail at: sidbreja@gmail.com
____   ALL OF THE ABOVE

D.     Attorney is authorized to communicate with the following individuals on behalf of Client:

E.     Additional Client comments or further instructions regarding communication with Client:

Client agrees to notify Attorney in writing of all changes

1

in the foregoing means of authorized communication as they occur.

## II.
## PURPOSE AND SCOPE OF LEGAL SERVICES

Client hereby retains and employs Attorney to provide legal services to Client as follows: Attorney will handle the Divorce Trial on Jun 6-8, 2023 in San Francisco Superior Family Court (Neha Dua Breja vs. Siddharth Breja, Case #: FDI-21-795427).

The legal services provided for in this Agreement do not include the filing or handling of any appeal or writ, or post-judgment matters/collections.  This includes bankruptcy in the event the client or an opposing party files for bankruptcy protection at any time in a case.  Separate arrangements must be made for appellate matters and collections, or bankruptcies.

## III.
## COOPERATION AND DUTIES OF CLIENT AND ATTORNEY

Client shall keep Attorney advised of all necessary information to ensure Attorney's ability to promptly communicate with Client at all times and support Client's interests. Attorney shall, in good faith, actively, vigorously and professionally pursue the purposes of the contract set out above. Client hereby authorizes Attorney to conduct any necessary investigation of Client and/or Client's claims, including but not limited to public records searches and related information.

## IV.
## ATTORNEY'S FEES

Client will pay Attorney for Attorney's fees for the legal services provided under this agreement at the following rates:

| | |
|---|---|
| Andrew G. Watters, Esq. | $500 per hour |
| Of Counsel Attorneys | $400-500 per hour |
| Associate Attorneys | $300 per hour |
| Paralegals | $150 per hour |
| Investigator | $150 per hour |
| Assistant Investigator | $ 75 per hour |

Attorney and Attorney's personnel if applicable will keep track of time spent on the case in increments of one-tenth of an

hour, rounded up for each particular activity to the next one-tenth of an hour.  The minimum time charged for any particular activity will be one-tenth of an hour (six minutes).

Client is informed that Attorney's rates are not set by law, but rather are negotiable between the Attorney and the Client.

## V.
## COSTS

Client will pay all costs in connection with Attorney's representation of Client under this Agreement.  Costs are due in addition to attorney fees.  Items that are considered costs include, for example, deposition transcripts and expert witness fees.

Items that are not to be considered costs, and that must be paid by Client without being either advanced or contributed to by Attorney, include but are not limited to other parties' court costs, if any, or court-ordered sanctions that Client is personally required to pay.

## VI.
## ADVANCE DEPOSITS

Client must pay ten thousand dollars ($10,000) up front as a retainer, which will be held in Attorney's trust account as security and applied to Attorney's bills to Client, or in the alternative held in Attorney's operating account and treated as a pre-payment or true retainer, at Attorney's sole discretion (Attorney's policy is as stated in his written deposit policy, which is available on request: payments under $5,000 are held in the operating account, while payments over $5,000 (or to the extent greater than $5,000) are held in the trust account, unless expected to be earned within 30 days).  This payment is due before any work commences.  **It is expressly understood that in the event Client hires, then discharges, Attorney within any period of time due to a change in Client's decision, or otherwise, the retainer is non-refundable.  Client must also pay $10,000.00 up front as a trial deposit.  Trial deposit is refundable if the case settles at least 10 days before trial (which is June 6-8, 2023).  Attorney agrees to cap fees at $20,000.000 through end of this trial.**

Attorney may, in Attorney's sole discretion, require advance deposits or pre-payments at any time for any purpose, including

but not limited to covering specific items of costs (expert witness fees in particular), and/or additional attorney fees.

## VII.
## DEPOSIT FOR TRIAL

If Attorney is expected to present any trial, Attorney reserves the right to require a separate trial deposit. The amount is typically $4,000 per day of trial. Client is required to pay separately for jury fees, juror food and lodging, copying of exhibits, and other trial-related costs.

## VIII.
## STATEMENTS / PAYMENTS / LATE CHARGES

Attorney shall issue bills to Client on a monthly basis reflecting the preceding month's work. Payments are due fifteen calendar days after each bill is issued. Attorney may issue more frequent bills in the event the volume of work or costs incurred is greater than anticipated.

## IX.
## WITHDRAWAL OF ATTORNEY

Client may terminate Attorney at any time, but Attorney shall have a lien on Client's recovery in an amount equal to the reasonable value of his services at the time of discharge, plus all costs incurred. Attorney, if he seeks to be relieved as counsel, must file a motion to be relieved with the court if Client does not consent to Attorney terminating the arrangement.

## X.
## ENTIRE AGREEMENT

This Agreement contains the entire agreement of the parties regarding the subjects covered thereby. Aside from Attorney's deposit policy, there are no side deals, oral understandings, or other separate arrangements not contained in this Agreement. No other agreement, representation, statement, or promise made on or before the effective date of this Agreement will be binding on the parties.

## XI.
## MODIFICATION BY SUBSEQUENT AGREEMENT

This Agreement may be amended or modified by subsequent agreement of the parties only by a writing signed by both of them or an oral agreement to the extent that the parties carry it out.

## XII.
## ARBITRATION OF FEE DISPUTE

Before resorting to litigation, Attorney and Client shall first attempt to arbitrate any disputes over attorney fees using a fee arbitration program approved by the State Bar of California. Client is advised that fee arbitration is optional for Client but mandatory for Attorney (though the award shall be nonbinding).

## XIII.
## PROFESSIONAL LIABILITY INSURANCE

Attorney represents that he has professional liability insurance.

## XIV.
## WAIVER OF CONFLICT

Not applicable.

## XV.
## EXECUTION

The signature of any party herein to a copy of the original contract shall be as valid and binding as though endorsed on the original, which shall be maintained by Attorney. This agreement may be executed in counterparts.

Executed on and/or effective as of the day and year first above written.

_____
Sid Breja (Client)

ANDREW G. WATTERS, ESQ. (Attorney)

*Andrew G. Watters*

_____

By: Andrew G. Watters, Owner

# LSA

Final Audit Report                                          2023-05-01

| | |
|---|---|
| Created: | 2023-05-01 |
| By: | Siddharth Breja (sidbreja@gmail.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAN8FaXawH4IUY7tVASF3Ib9PWbEtPl6O7 |

## "LSA" History

Document created by Siddharth Breja (sidbreja@gmail.com)
2023-05-01 - 5:00:41 PM GMT- IP address: 67.160.208.200

Document emailed to Andrew Watters (andrew@andrewwatters.com) for signature
2023-05-01 - 5:01:25 PM GMT

Email viewed by Andrew Watters (andrew@andrewwatters.com)
2023-05-01 - 5:08:25 PM GMT- IP address: 38.122.223.130

Document e-signed by Andrew Watters (andrew@andrewwatters.com)
Signature Date: 2023-05-01 - 5:09:37 PM GMT - Time Source: server- IP address: 38.122.223.130

Agreement completed.
2023-05-01 - 5:09:37 PM GMT

 Adobe Acrobat Sign

# Defendant Breja's Exhibit 2

Case#: 4:23-cv-03183-HSG

Andrew G. Watters (Plaintiff) vs. Siddharth Breja (Defendant) et al


# Sub-out (Client-Attorney Communication)
4 messages

---

**Sid Breja** <breja.pc@gmail.com>                                            Fri, May 26, 2023 at 5:24 PM
To: "Andrew G. Watters" <andrew@andrewwatters.com>

Hi Andrew,

As per our conversation, I think it is best for me to retain someone else for the trial.  Please send me the sub-out form, and refund me the $10K held for the trial and also the unused remainder of the other $10K retainer, as I need that money to retain someone else.  Please do so as soon as possible.

I have been requesting you to send me the filed copies of all the filings so far, so please send all of those as well.

Thank you.

Have a great weekend,
Sid

---

**Andrew G. Watters** <andrew@andrewwatters.com>                              Fri, May 26, 2023 at 5:43 PM
To: Sid Breja <breja.pc@gmail.com>

Hi Sid,

Thanks for letting me know.  I'll send you the sub-out form on Tuesday.

Here is your pre-bill showing the work on your case.  As indicated, due to the amount of time spent on your case, you're not entitled to any meaningful amount back.

You should not be surprised at all considering the volume of calls, texts, and emails, which were grossly excessive and more than any other client by a factor of four or five.  The same goes for the revisions to pleadings, etc.

I wish you the best, and I'm sorry it didn't work out.

Best,

Andrew G. Watters
andrew@andrewwatters.com
+1 (415) 261-8527
https://www.andrewwatters.com
[Quoted text hidden]



---


**doc.pdf**
7K

---

**Sid Breja** <breja.pc@gmail.com>                                            Fri, May 26, 2023 at 6:02 PM
To: "Andrew G. Watters" <andrew@andrewwatters.com>

I am not just surprised but shocked to see this bill.  With all the work mostly done by me, and all the screw-ups from you, this is completely unacceptable to me and I am disputing this bill.  Considering what you delivered, even the work done at the trial brief when you compare documents and see your inputs, it is hardly an hour or two.  I can go into line items here but we are way off, e.g. $1,600 for a 2-page letter to the judge that I re-drafted completely in egregious billing.  The estimate was for a preparation for a 3-day trial for $10K and another $10K for the actual trial for 3 days.  Neither was the prep for a 3 days trial and as for the actual trial that never happened to begin with, and per your agreement I am telling you 10 days in advance.  If you want to resolve this amicably, let me know, or else I will have to explore other means available to me to seek a refund of my fees.

Thanks,
Sid

[Quoted text hidden]

---

**Andrew G. Watters** <andrew@andrewwatters.com>                    Sat, May 27, 2023 at 7:47 PM
To: Sid Breja <breja.pc@gmail.com>

Hi Sid,

Thanks for writing, but I'm in the clear here.  Feel free to take this matter to fee arbitration, where you'll likely find out that your views are inaccurate and unreasonable.

I have more than 100 texts, 250+ emails, and tons of calls from/to you just in the last 30 days.  You often emailed me five or more times a day, called five or more times a day, and texted me just as often.  This is approximately 15x a typical client's interactions with me, and the billing certainly reflects that.

You also dictated various things to be done that were unnecessary and counterproductive, and you exercised an extreme degree of control and micromanagement over my work-- going so far as to specify the exact legal issues and theories you wanted presented in the exact order you wanted them presented, and even criticizing the use of particular citations and cases.  As an example, we were last at version *eight* of the trial brief with 17 pages of material, even after I told you the judge is going to read it on the morning of trial in just a few minutes and doesn't have the kind of time that would justify this level of effort.  Separately, despite being advised that the brief was far less important than preparing the witness outlines for the actual trial testimony, you insisted that we spend all that time on revisions to the brief and you deferred preparing the critically important witness outlines.

Anyway, I'm not going to argue over email with you, as it's not my place to dictate how you spend your money.  You decided you wanted to spend it this way, and I'm not going to hold the bag for you.

The case didn't settle, and in any case I earned substantially all of the trial deposit through my work.  Had the trial proceeded on June 6-8, I would have had to do it essentially at my own expense, which also demonstrates that the fee charged was too low to work for us both.

Your refund request is denied.  The final bill will be issued once you sign the substitution, and I'll be happy to address these issues in depth in a fee arbitration so you can have clarity and hear it from someone else.  In summary, your expectations are extremely unrealistic, your level of control is highly unusual and inappropriate, and your volume of communications is also grossly excessive.

I wish you good luck with the trial and I hope you are able to find replacement counsel who can meet your expectations and who is also compatible with your unusual style.

Best,

Andrew G. Watters
andrew@andrewwatters.com
+1 (415) 261-8527
https://www.andrewwatters.com



On 5/26/23 6:02 PM, Sid Breja wrote:
> I am not just surprised but shocked to see this bill.  With all the work mostly done by me, and all the screw-ups from
> you, this is completely unacceptable to me and I am disputing this bill.  Considering what you delivered, even the work
> done at the trial brief when you compare documents and see your inputs, it is hardly an hour or two.  I can go into line
> items here but we are way off, e.g. $1,600 for a 2-page letter to the judge that I re-drafted completely in egregious
> billing.  The estimate was for a preparation for a 3-day trial for $10K and another $10K for the actual trial for 3 days.
> Neither was the prep for a 3 days trial and as for the actual trial that never happened to begin with, and per my
> agreement I am telling you 10 days in advance.  If you want to resolve this amicably, let me know, or else I will have to
> explore other means available to me to seek a refund of my fees.
>
> Thanks,
> Sid
>
> On Fri, May 26, 2023 at 5:43 PM Andrew G. Watters <andrew@andrewwatters.com <mailto:andrew@andrewwatters.c
> om>> wrote:

Hi Sid,

Thanks for letting me know.  I'll send you the sub-out form on Tuesday.

Here is your pre-bill showing the work on your case.  As indicated, due to the amount of time spent on your case, you're not entitled to any meaningful amount back.

You should not be surprised at all considering the volume of calls, texts, and emails, which were grossly excessive and more than any other client by a factor of four or five.  The same goes for the revisions to pleadings, etc.

I wish you the best, and I'm sorry it didn't work out.

Best,

Andrew G. Watters
andrew@andrewwatters.com <mailto:andrew@andrewwatters.com>
+1 (415) 261-8527
https://www.andrewwatters.com <https://www.andrewwatters.com>
[snip]



# Defendant Breja's Exhibit 3

Case#: 4:23-cv-03183-HSG

Andrew G. Watters (Plaintiff) vs. Siddharth Breja (Defendant) et al


## Please Sign

**Mail Delivery Subsystem** <mailer-daemon@googlemail.com>                Tue, May 30, 2023 at 2:28 PM
To: breja.pc@gmail.com

 ### Message blocked

Your message to **andrew@andrewwatters.com** has been blocked. See technical details below for more information.

The response from the remote server was:

```
554 5.7.1 <breja.pc@gmail.com>: Sender address rejected: Your message has been rejected
because we have determined you are harassing us.
```

Final-Recipient: rfc822; andrew@andrewwatters.com
Action: failed
Status: 5.7.1
Remote-MTA: dns; mail.andrewwatters.com. (2001:550:2:b::56:2, the server for
 the domain andrewwatters.com.)
Diagnostic-Code: smtp; 554 5.7.1 <breja.pc@gmail.com>: Sender address rejected: Your message has been rejected
because we have determined you are harassing us.
Last-Attempt-Date: Tue, 30 May 2023 14:28:44 -0700 (PDT)



---------- Forwarded message ----------
From: Sid Breja <breja.pc@gmail.com>
To: "Andrew G. Watters" <andrew@andrewwatters.com>
Cc: Travis Cowart <reception@andrewwatters.com>
Bcc:
Date: Tue, 30 May 2023 14:28:20 -0700
Subject: Re: Please Sign
----- Message truncated -----


## Please Sign

**Sid Breja** <breja.pc@gmail.com>                                                  Tue, May 30, 2023 at 2:28 PM
To: "Andrew G. Watters" <andrew@andrewwatters.com>
Cc: Travis Cowart <reception@andrewwatters.com>

Andrew - I had to contact you in response to your request to sign the sub-out form.  Unfortunately, you are still my
attorney on record, so you need to file the sub-out immediately and serve it to the Opposing Counsel and Bcc me.  I have
already signed it.  Also, as a client, it is my right to ask for filed copies (including the ones on Friday, 5/26) in my case, and
you have given me none of those so far despite several requests.  In the past, you have not notified me of notices from
Opposing counsel and I am concerned that you will continue to get those till your file the sub-out, so obviously I need to
contact you for that.  I have already suffered irreparable harm with your representation and now I am simply seeking to
end it.

Thanks,
Sid


On Tue, May 30, 2023 at 1:44 PM Andrew G. Watters <andrew@andrewwatters.com> wrote:
> Hi Sid,
>
> You and I have our disagreements, but you don't get to accuse me of
> fraudulent billing or my staff of anything.  Don't contact us again.
>
> Regards,
>
> Andrew G. Watters
> andrew@andrewwatters.com
> +1 (415) 261-8527
> https://www.andrewwatters.com
>
> On 5/30/2023 1:32 PM, Sid Breja wrote:
> > Hi Travis,
> >
> > a) You DO NOT need to mail it by hand (Opposing Counsel accepts
> > electronic service)
> > b) I have already signed and sent it for Andrew's and your signature,
> > c) on Page 2, you DO NOT have to list my previous attorneys, just the
> > Opposing Counsel.
> >
> > For your reference, attached is how my previous attorney's law firm
> > filled it out.
> >
> > Nothing has ever been done with your law firm in a smooth manner and has
> > always resulted in numerous emails like this, which is one of the
> > several tactics by Andrew to create fraudulent billing.  Though since
> > you are a web application programmer and not really a paralegal or a
> > person with any formal law education it hardly surprises me.
> >
> > Thanks,
> > Sid
> >
> > On Tue, May 30, 2023 at 12:41 PM Travis Cowart
> > <reception@andrewwatters.com <mailto:reception@andrewwatters.com>> wrote:
> >
> >     Spoke to Andrew about this a moment ago, and he said that he will
> >     respond to you about this shortly.
> >

> Thanks,
>
> Travis Cowart
> Web Application Programmer
> https://www.andrewwatters.com/law/ <https://www.andrewwatters.com/law/>
> +1 (650) 590-6399
>
> On 5/30/2023 12:30 PM, Sid Breja wrote:
> > Andrew - I have also made numerous requests for sending me filed
> copies
> > in my case and I have still not received those.  The filings
> (Opposition
> > to RFO) that you said you made on Friday, 5/26 are still not
> showing up
> > on the register of actions in the case, making my obviously
> concerned
> > that if they were ever filed as I have not even received the
> > receipt from your service provider.  Please send me all those today.
> > Thanks.
> >
> > On Tue, May 30, 2023 at 12:26 PM Sid Breja <breja.pc@gmail.com
> <mailto:breja.pc@gmail.com>
> > <mailto:breja.pc@gmail.com <mailto:breja.pc@gmail.com>>> wrote:
> >
> >     I have signed it and sent it out for signatures through Adobe
> Sign.
> >
> >     On Tue, May 30, 2023 at 11:43 AM Travis Cowart
> >     <reception@andrewwatters.com
> <mailto:reception@andrewwatters.com>
> <mailto:reception@andrewwatters.com
> <mailto:reception@andrewwatters.com>>>
> >     wrote:
> >
> >         Good morning Sid,
> >
> >         Please sign the attached substitution of attorney form and
> >         return it to
> >         me ASAP so that we can submit it today.
> >
> >         Cheers,
> >
> >         --
> >         Travis Cowart
> >         Web Application Programmer
> >       > https://www.andrewwatters.com/law/
> <https://www.andrewwatters.com/law/>
> >         <https://www.andrewwatters.com/law/
> <https://www.andrewwatters.com/law/>
> >         +1 (650) 590-6399
> >

