UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW G. WATTERS,<br><br>    Plaintiff,<br><br>    v.<br><br>SIDDHARTH BREJA, et al.,<br><br>    Defendants. | Case No. 23-cv-03183-HSG<br><br>**ORDER GRANTING DEFENDANT BREJA'S MOTION TO DISMISS AND TERMINATING AS MOOT DEFENDANT JP MORGAN CHASE'S MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 30, 33 |

Pending before the Court are motions to dismiss filed by Nominal Defendant JP Morgan Chase, Inc. (Dkt. No. 30) and Defendant Siddharth Breja (Dkt. No. 33). The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **GRANTS** Defendant Breja's motion, Dkt. No. 33, **TERMINATES AS MOOT** JP Morgan Chase Inc.'s motion, Dkt. No. 30, and **DISMISSES** the complaint with leave to amend.

**I.   INTRODUCTION**

On June 27, 2023, Plaintiff Andrew Watters (or "Plaintiff") filed a complaint against Siddharth Breja, also naming American Express ("AmEx") and JP Morgan Chase Inc. ("Chase") as nominal defendants. *See* Dkt. No. 1 ("Compl."). The lawsuit arises out of a dispute that Watters, an attorney, had with Breja, his former client. Watters alleges that after briefly representing Breja during his divorce proceedings, Breja terminated the representation and clawed back money previously and properly paid to Watters by filing successful but fraudulent refund requests with the nominal bank defendants. Compl. ¶¶ 14, 16, 21–24. He further alleges that Breja's requests also resulted in the closure of his Chase client trust account. *Id.* ¶ 21.

In his complaint, Plaintiff asserts a violation of 18 U.S.C. § 1030(a)(4), the Computer

1  Fraud and Abuse Act, as well as various state law claims (for fraud, breach of contract, and Unfair
2  Competition Law violations) against Defendant Breja.  Compl. ¶¶ 26-73.  Plaintiff seeks
3  declaratory relief, an award of damages against Defendant Breja, and an injunction directing
4  Defendant Breja as well as the nominal defendant banks to return the funds at issue and reopen the
5  closed account.  *See generally* Compl.  Plaintiff alleges that the Court's jurisdiction over his
6  federal claim is proper under 28 U.S.C. § 1331, and that the Court's supplemental jurisdiction over
7  the transactionally related state claims is likewise permitted under 28 U.S.C. § 1367.  *Id*. ¶ 10.
8        On August 16, 2023, nominal defendant AmEx timely filed an answer to the complaint.
9  The same day, nominal defendant Chase moved to dismiss the complaint, Dkt. No. 30, and on
10  August 28, 2023, Defendant Breja did the same.  Dkt. No. 33.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

//

**A.     Defendant Breja's Motion to Dismiss**

The Court first considers Defendant Breja's motion to dismiss, which argues that Plaintiff's first cause of action – alleging computer fraud in violation 18 U.S.C. § 1030(a)(4) – is "frivolous." Dkt. No. 33 at 12. The Court construes this as a challenge under Rule 12(b)(6), and agrees that Plaintiff fails to state a claim under the Computer Fraud and Abuse Act.

The Computer Fraud and Abuse Act ("CFAA") prohibits, among other things, "acts of computer trespass by those who are not authorized users or who exceed authorized use. It creates criminal and civil liability for whoever intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer." *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1065–66 (9th Cir. 2016) (cleaned up), *cert. denied*, 138 S. Ct. 313 (2017). In other words, it is an anti-hacking statute. *See hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196 (9th Cir. 2022) ("The CFAA was enacted to prevent intentional intrusion onto someone else's computer—specifically, computer hacking.); *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) (affirming that the statute's "general purpose is to punish hacking—the circumvention of technological access barriers") (en banc) ("*Nosal I*").

An individual is in violation of § 1030(a)(4) if they:

> "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period . . . ."

18 U.S.C. § 1030(a)(4). "The statute thus provides two ways of committing the crime of improperly accessing a protected computer: (1) obtaining access without authorization; and (2) obtaining access with authorization but then using that access improperly." *Musacchio v. United States*, 577 U.S. 237, 240 (2016). Because the term "protected computer" refers to any computer "used in or affecting interstate or foreign commerce or communication" – which has been interpreted to cover "effectively any computer connected to the Internet" – the "pivotal CFAA question" in most cases is whether the alleged access was "without" or "exceed[ing]" authorized access within the meaning of the CFAA. *hiQ Labs, Inc.*, 31 F.4th at 1195.

3

Here, the answer to that "pivotal question" is plainly no. Plaintiff's complaint does not plausibly allege facts showing that in his attempt to get AmEx and Chase to return the money he previously paid to Plaintiff, Defendant Breja accessed a protected computer "without authorization" or while "exceed[ing his] authorized access" in violation of § 1030(a)(4).

First, Plaintiff does not allege that Defendant Breja logged into restricted (e.g. password-protected) areas of the AmEx or Chase websites in order to "file a fraudulent complaint with Chase Bank" or to "initiat[e] a fraudulent refund request [with AmEx]," as opposed to lodging his requests through the public website interface.[1] Compl. ¶¶ 21, 22. This distinction is significant because Breja's accessing of a public, unrestricted webpage cannot constitute "access without authorization," given that no threshold authorization is required. *hiQ Labs, Inc.*, 31 F.4th at 1199 (noting that publicly available webpages have "erected no gates to lift or lower in the first place").

But even assuming that Defendant Breja *did* submit his refund requests after logging into a password-protected part of Chase and AmEx's webpages, there are no factual allegations that suggest he did so "without authorization" or while "exceed[ing his] authorized access." For example, there is no indication that in his effort to get the money refunded, Breja used false credentials to improperly gain access to the nominal defendant bank's websites (i.e. without authorization), or that he gained access to those websites through proper credentials, but then somehow accessed unauthorized portions of, or information within, those sites (i.e. exceeding authorized access). *See United States v. Nosal*, 844 F.3d 1024 (9th Cir. 2016) (discussing the standard for an "unauthorized access" violation) ("*Nosal II*"); *Van Buren v. United States*, 141 S. Ct. 1648, 1654-62 (2021) (discussing the standard for an "exceeds authorized access" violation).

Instead, Plaintiff just pleads that Breja's conduct violated AmEx's terms of service, which allegedly prohibit a user from accessing the AmEx website or online accounts for the purposes of

---

[1] Plaintiff's allegation regarding Defendant Breja's contact with Chase does not even specify whether his refund request was made electronically (nor is it clear whether Breja himself even had a Chase account). Plaintiff only states that Defendant Breja "submitted false information to Chase," Compl. ¶ 24, which raises questions about whether a "protected computer" was even involved. Nevertheless, the Court, construing the allegations in the light most favorable to Plaintiff, will assume that Breja's request to Chase was submitted on its website or another electronic interface, rather than by mail or other means.

4

fraud. Compl. ¶ 23. But "a violation of the terms of use of a website – without more – cannot establish liability under the CFAA." *Power Ventures, Inc.*, 844 F.3d at 1067; *see also Nosal I*, 676 F.3d at 861–63. And here, there was no "more" alleged, such as AmEx's revocation of authorized access followed by Breja's continued access. *See Power Ventures, Inc.*, 844 F.3d at 1067.

While Plaintiff may be disgruntled with Defendant's successful efforts to get his prior payments to Plaintiff refunded, Plaintiff has not pled facts showing that Defendant Breja did so in violation of the CFAA. The conduct at issue is simply not analogous to "breaking and entering," which is the kind of computer misconduct the CFAA was designed to combat. *hiQ Labs, Inc.*, 31 F.4th at 1197. As a result, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's CFAA claim under Rule 12(b)(6).

### III. SUBJECT MATTER JURISDICTION

While Plaintiff asserts additional claims in his complaint, and Chase and Breja raise additional arguments in their motions, the Court first considers the impact of the dismissal of the CFAA claim on its ongoing subject matter jurisdiction. Courts have an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). If a court determines that it lacks subject matter jurisdiction at any time, it must sua sponte dismiss the case. *See* Fed. R. Civ. P. 12(h)(3).

After considering the issue, the Court concludes that the dismissal of Plaintiff's CFAA claim – his only federal cause of action – extinguishes the Court's subject matter jurisdiction over this matter. Federal courts are "courts of limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and have original jurisdiction over all civil actions (1) "arising under the Constitution, laws, or treaties of the United States," or (2) where complete diversity of citizenship exists and the matter in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1331 (establishing "arising under" or "federal question" jurisdiction), 1332 (establishing "diversity jurisdiction.") Without a viable CFAA claim, the Court has no basis on which to exercise original jurisdiction over Plaintiff's claims: it lacks federal question jurisdiction given that the dismissed CFAA claim is Plaintiff's only federal cause of action, and it cannot exercise diversity jurisdiction

given that the amount in controversy (at most $20,000) is well below $75,000.  And the Court declines to exercise supplemental jurisdiction over Plaintiff's transactionally related state law claims, given that it dismissed the associated federal claim.  *See* 28 U.S.C. § 1367(c)(3) (authorizing a district court to decline supplemental jurisdiction where the court "has dismissed all claims over which it has original jurisdiction").

Since it finds it lacks subject matter jurisdiction, the Court accordingly **DISMISSES** Plaintiff's complaint for lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3).  However, the Court grants Plaintiff leave to amend his complaint.

## IV.   CONCLUSION

The Court **GRANTS** Defendant Breja's motion to dismiss Plaintiff's CFAA claim.  Dkt. No. 33.  Given the implications of this ruling on its subject matter jurisdiction, the Court need not reach the remainder of Breja's motion, nor Chase's motion to dismiss, which the Court **TERMINATES AS MOOT**.  Dkt. No. 30.  The complaint is accordingly **DISMISSED**, and Plaintiff is directed to file any amended complaint within 21 days of this order.  Plaintiffs is advised that he may assert only those causes of action for which he has a factual basis.

**IT IS SO ORDERED.**

Dated:   1/18/2024

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge